Fletcher vs. Crowell, imp.

*By the Court.*— So ordered.

RYAN, C. J., took no part.

---

## FLETCHER vs. CROWELL, imp.

CONTRACTS. *(1) Contract construed. (2) Effect of mutual releases of their undivided interests, by two of three owners in common. (3) Effect of stipulation in action, upon title to land.*

1. By contract between F., C. and B., F. and C. were to furnish B. money with which to construct a certain road, not exceeding $30,000, of which three-fourths was to be furnished by F., and one-fourth by C.; B. was

to superintend the work; and certain lands granted to the state to aid in the construction of said road were to be divided between the three parties, in certain proportions, when earned. F. paid B. the sum of money which he agreed to pay; but B., by fraudulent representations, without the knowledge of F., induced C. to advance to him a larger sum than he was bound to furnish. *Held,* that F.'s right to that proportion of said lands which was awarded him by the contract, is not affected by the questions whether any and what part of the money furnished by him to B. was actually used by the latter in the construction of the road.

2. F., B. and C. were entitled to 24,000 acres of land, in the proportion of nine, four and three undivided sixteenths, respectively, and, in an arbitration between B. and C. only, an undivided 12,000 acres of said land having been awarded to each of them subject to F.'s rights, they (B. and C), in pursuance of such award, each released to the other all his interest in the 12,000 acres awarded to the other; and subsequently F. released to B. his interest in the 12,000 acres awarded to the latter. *Held,*

(1) That after the mutual releases of B. and C., each owned an interest equal to 5,250 acres in one undivided half of said lands, and the remaining interest, equal to 6,750 acres in each undivided half, was in F.

(2) That after the release by F. to B., the latter owned one undivided half of the land, while F. owned 6,750, and C. 5,250 acres, of the remaining undivided half.

3. While this suit was pending between B., C. and F., to determine their respective interests in said 24,000 acres, F. executed and delivered to B. an instrument in which he stated that B. had given him a certain note for $3,000, the amount of which, when paid, he (F.) agreed to accept in full compensation for his interest in that half of said land which had been awarded to B. in said arbitration between B. and C. The note of B. mentioned in said instrument being paid: *Held,* that the instrument operates as a conveyance to B. of F.'s interest in the undivided 12,000 acres there mentioned.

APPEAL from the Circuit Court for *Milwaukee* County.

In 1863, congress granted to the state of Wisconsin certain lands to aid in the construction of a military road from Green Bay or Fort Howard to the Michigan state line. 12 U. S. Stats. at Large, 797. The proceedings under that grant, down to and including a part of the year 1867, are fully stated in *Winslow v. Crowell*, 32 Wis., 639. That case disposed of the lands earned by the construction of thirty miles of such road by Jackson Hadley.

The contract between the plaintiff and the defendants *Crowell* and Babcock (to whom the unexecuted portion of the contract to construct such road had been assigned by the administratrix of Mr. Hadley's estate), was, that the plaintiff and *Crowell* should furnish Babcock the money with which to construct the road, not exceeding $30,000, three-fourths of which was to be furnished by the plaintiff, and one-fourth by *Crowell;* that Babcock was to superintend the work; and that the lands, when earned, should be divided between them in the proportion of nine-sixteenths to the plaintiff, four-sixteenths to Babcock, and three-sixteenths to *Crowell.*

Forty miles of road were constructed in 1867 under this contract, and the lands thereby earned were divided between the parties as therein agreed.

In 1868, twelve and one-half miles of such road were constructed, and accepted by the proper commissioners. The lands thereby earned, being thirty-seven and one-half sections, or 24,000 acres, were duly conveyed by the United States to the state of Wisconsin.

This action was brought to determine who were entitled to such last mentioned lands, and it arose under the following circumstances: The plaintiff paid to Babcock the porportionate sum of money which he agreed to pay for the construction of twelve and a half miles of such road, and is in no default in that respect. Babcock, however, represented to *Crowell* that the plaintiff was paying nothing on the contract; that he had really abandoned it, leaving only himself and *Crowell* interested therein; and thereby induced *Crowell* to advance to him much more money than he was bound by the contract to furnish. Afterwards Babcock and *Crowell* submitted certain differences between them in respect to such lands to arbitration, and the award gave each an undivided one-half of the lands, or $12,000 acres, subject to the rights of the plaintiff therein. Each of them thereupon executed to the other a release or assignment of his interest in the 12,000 acres of land

so awarded to the other, with a consent that patents for such lands be issued by the governor pursuant to the award.

The plaintiff was not a party to the arbitration proceedings, but pending the same he commenced this action to determine the rights of the respective parties in such lands, and prayed for an accounting and an injunction.

Pending the action, the plaintiff, in consideration of $3,000, released to Babcock his interest in the one-half of the lands earned in 1868, so awarded to Babcock, and also released all personal claim against the latter in this action.

Upon such releases a patent was duly issued by the governor to the assignee of Babcock for an undivided one-half of said 24,000 acres of land.

The circuit court gave judgment awarding 9,000 acres of the other half of such lands to the plaintiff, and the remaining 3,000 acres to *Crowell.* The latter appealed from the judgment.

The appeal was first heard at the August term, 1876, on briefs of *Finches, Lynde & Miller,* for the appellant, and *Frank B. Van Valkenburgh* for the respondent, and oral arguments by *H. M. Finch* and *Mr. Van Valkenburgh.*

For the appellant it was contended, 1. That the agreement of July 12, 1867, between *Fletcher,* Babcock and *Crowell,* did not create a copartnership, because it contained no clause fixing losses. *Ruddick v. Otis,* 33 Iowa, 402, and cases there cited; 2 Neb., 348; 10 Johns., 225; 31 N. Y., 328; 41 id., 569; 19 Ala., 780; 44 Cal., 61–2; 15 M. & W., 292; 5 Eng. L. & E., 67; *Green v. Beesley,* 2 Bing. N. C., 108. 2. That the legal effect of the contract was to make Babcock an *agent;* but that it was a several and not a joint contract, under which separate actions would have to be brought by Babcock against *Crowell* and *Fletcher,* for any default of either of them in paying his proportion of the $30,000, each being liable only for his own default; that Babcock was therefore the *separate agent of each* of the other two parties to the contract; that any

defalcation or misappropriation of money paid to him by either *Fletcher* or *Crowell* was to be borne only by the party paying it; that if *Fletcher* ever paid to Babcock the full amount which he had agreed to pay, the evidence was that only a small portion thereof (not exceeding $780) actually went into the construction of the road, while the whole of the money advanced by *Crowell* actually went into the work; that *Fletcher* must bear the loss of moneys advanced by him, caused by the default of his own agent; and that he could not recover his full proportion of the lands earned, without paying into court for *Crowell's* benefit the amount for which he is in default, with interest. 3. That even if the contract created a copartnership, and if *Fletcher* has fully performed on his part, still the judgment must be modified; that in that case division of the lands must be made as though there had been no arbitration between *Crowell* and Babcock, *Fletcher* being neither party nor privy to the arbitration (*Schuman v. Garratt*, 16 Cal., 102), and there being no ground upon which he can set it up as an estoppel; and that, irrespective of the arbitration, *Crowell* was entitled to 1,500 acres more than was awarded him by the circuit court.

For the respondent it was contended: 1. That it was clear from the evidence that the parties to the contract here in question intended to create a partnership thereby, and understood and believed that such a partnership had been created, and that the contract did in fact create a partnership between them, providing for community of capital, and for a division of profits and losses (Collyer on Part., §§ 3, 16, 17, 38, 39, 41; Story on Part., sec. 3, ch. 3, pl. 15, 16, 18–23, 27, 31–36); and that a partner may provide for perfect immunity from loss. Collyer on Part., §§ 18, 19; Story on Part., sec. 3, ch. 3, pl. 20; *Bond v. Pittard*, 3 M. & W., 357; *Chisholm v. Cowles*, 42 Ala., 180; *Haskins v. Burr*, 106 Mass., 48; *Wheeler v. Farmer*, 38 Cal., 203; *Smith v. Moynihan*, 44 id., 57; *Lintner v. Millikin*, 47 Ill., 178; *Freese v. Ideson*, 49 id., 191;

Criteria of Partnership, 10 Am. Law. Reg., N. S., 209. 2. That by virtue of their partnership agreement, Babcock was entitled to four-sixteenths, *Crowell* to three-sixteenths, and *Fletcher* to nine-sixteenths, of the lands earned in 1868; that the arbitration between Babcock and *Crowell* alone, and the subsequent assignments by *Crowell* and Babcock to each other, could have no effect on plaintiff's rights; that *Crowell's* assignment to Babcock, however, gave the governor absolute authority to convey to Babcock, or to his order, 12,000 acres of land out of the 24,000 acres belonging to the three partners, so far as *Crowell* could give it; that inasmuch as Babcock's and *Crowell's* interests, added together, amounted to less than 12,000 acres, it would seem that, by that assignment, *Crowell* transferred to Babcock all his right, title and interest in the whole 24,000 acres; that if Babcock had presented to the governor a contract of copartnership and this assignment by *Crowell*, and demanded a patent for all of his own and *Crowell's* interest, he would have been entitled to a patent of seven-sixteenths of the 24,000 acres; that the fact that *Fletcher* afterwards, on the strength of Babcock's assertion that he had purchased *Crowell's* entire interest, and needed one-sixteenth from *Fletcher* to enable him to fulfill his contract for the sale of 12,000 acres of that land, assented to the governor's issuing a patent on Babcock's order for that 12,000 acres, provided it should not be held to waive his claim to the other undivided 12,000 acres, amounted simply to a sale of the one-sixteenth needed by Babcock, and left *Fletcher* entitled to the remaining eight-sixteenths, to wit, the entire 12,000 acres now in dispute, the title to which is still held by the state.

The following opinion was filed at the August term, 1876.

LYON, J. By means of the false and fraudulent representations of the defendant Babcock, the defendant *Crowell* was induced to pay Babcock more money than the contract be-

tween the parties concerning the construction of the road and the division of the lands among them bound him to pay. The plaintiff was not a party to the fraud, and neither requested *Crowell* to make such payments nor consented thereto. The fraud was that of Babcock alone, and the overpayments became a demand against him alone.

But for the submission and award, the court would doubtless have adjudged the excess of such payments a lien upon Babcock's share of the land, or, by some other proper provision in the judgment in this or some other appropriate action, would have secured the repayment of such excess to *Crowell*. Such overpayments were adjusted, however, by the award and the mutual releases executed in pursuance thereof, and thereby ceased to be a matter for adjustment in this action.

Had the plaintiff been a party to the arbitration, the award would doubtless have disposed of all transactions and all questions under the contract, leaving nothing to be determined by the court. But he was not a party thereto, and hence his rights are unaffected by the award. As the case stood when the award was made, he was entitled, under the contract between the parties, to nine-sixteenths, or 13,500 acres, of the 24,000 acres earned.

His release to Babcock, *pendente lite*, of his interest in an undivided half of the land, is, however, an important factor in determining the plaintiff's rights in the land. The effect of such release, and of the award and the execution thereof by the defendants, vested in Babcock or his assignee the absolute right to an undivided half, or 12,000 acres of the land (which includes Babcock's interest in the whole 24,000 acres), and left nothing for the court to do but to ascertain and adjudge the respective interests of the plaintiff and *Crowell* in the remaining 12,000 acres.

It is argued by the learned counsel for the defendant *Crowell*, that the contract between the parties does not constitute them partners in the construction of the road, but that

it is simply a contract whereby the plaintiff and *Crowell* employed Babcock to construct the road at an agreed price, to be paid by them in certain proportions, each thereby making Babcock his individual agent to receive and disburse the money which he agreed to put into the adventure. It is also claimed that the proof fails to show that the money paid by the plaintiff to Babcock, or but very little of it, was actually used by the latter in the construction of the road. From these premises, the counsel deduce the conclusion that the plaintiff has no interest in the lands in controversy, or, at most, that he is only entitled to recover to the extent that his money was actually put into the work, if any of it was used therein.

We are unable to adopt this conclusion. Aside from the question of copartnership, we find nothing in the contract under consideration by which the right of the plaintiff to an interest in the lands earned is made to depend upon the fact that Babcock actually used the money paid to him by the plaintiff, in the construction of the road. The plaintiff paid his money to Babcock as he agreed, and Babcock constructed the road as he agreed. Why, then, should not the plaintiff have his stipulated interest in the lands earned? The fact that *Crowell* paid Babcock more than the contract bound him to pay, seems to be a matter between him and Babcock, which does not affect the plaintiff, and which was adjusted and settled by the award and the releases executed pursuant thereto. Hence we find it unnecessary to determine whether the agreement between the parties constituted a copartnership.

But the learned counsel further contends that, conceding our view of the contract to be correct, still the defendant *Crowell* is entitled to 4,500 acres of the land, or 1,500 acres more than the judgment gives him. We cannot agree with counsel in this proposition. The interest of *Crowell* in the whole 24,000 acres was only 4,500 acres, and the claim of counsel that he is to have that amount out of the 12,000 acres which remains to be divided between himself and the plaintiff,

entirely ignores the fact that he (*Crowell*) released to Babcock his interest in the half conveyed to the assignee of Babcock. That release was not counterbalanced by the release from Babcock to *Crowell* of his interest in the remaining half, for the reason that Babcock had no interest in the remaining half to release. As already stated, his interest in the whole 24,000 acres was included in the half conveyed to his assignee. But *Crowell* had an interest in the last mentioned half, of 2,250 acres, to be affected by his release.

On the other hand, counsel for plaintiff contends that *Crowell* released to Babcock his interest in the whole 24,000 acres, and hence, that the plaintiff is entitled to the whole of the remaining 12,000 acres. Manifestly this position is untenable, for the reason that *Crowell* only released to Babcock his interest in the 12,000 acres awarded to the latter, and not his interest in the whole 24,000 acres.

We find ourselves unable, therefore, to adopt the theory of either party, and are compelled to determine the rights of the parties in the land in question upon grounds not urged in behalf of either. The releases to Babcock, executed by the plaintiff and *Crowell* respectively, are in form releases of the whole interest of the releasors in the 12,000 acres conveyed to Babcock's assignee. But, inasmuch as the plaintiff's original interest therein was 6,750 acres, and *Crowell's* 2,250 acres, and the quantity of the land actually conveyed by such releases was only 6,000 acres, it is apparent that the releases did not dispose of the whole interest of the releasors therein. We have concluded, after much deliberation and some hesitation, that the releases must be held to have conveyed the 6,000 acres in proportion to the respective interests of the releasors. That is to say, those interests being as three to one, the release of the plaintiff divested him of three-fourths of the 6,000 acres, or 4,500 acres, and that of *Crowell* divested him of one-fourth, or 1,500 acres. Our doubt has been, whether, inasmuch as *Crowell* released first, he should not be held to have released

his whole interest in the half awarded to Babcock (being 2,250 acres), instead of 1,500 acres. But we have been unable to satisfy ourselves that it should be so held.

Deducting the 4,500 acres released to Babcock from the plaintiff's interest in the whole of the land earned (which interest was 13,500 acres), there remaines 9,000, which is his interest in the 12,000 acres in question. A like process makes *Crowell's* interest therein 3,000 acres. In other words, the plaintiff is entitled to three-fourths, and *Crowell* to one-fourth, of the remaining 12,000 acres of land. And so the circuit court adjudged.

*By the Court.* — Judgment affirmed.

The appellant having moved for a rehearing, an order was made on the 22d of November, 1876, directing a reargument upon the question of the effect of the mutual releases of the respondent and Babcock, and the discontinuance of the suit against Babcock.

The cause was accordingly reargued at the January term, 1877, RYAN, C. J., not being present.

*Wm. P. Lynde,* for the appellant, argued substantially as follows: *Fletcher* had originally an interest of nine-sixteenths in the whole 24,000. He sold his interest of nine-sixteenths in one-half, or 12,000 acres, to Babcock, for $3,000; and his interest in the remaining half is the nine-sixteenths thereof, or 6,750 acres. The remainder, or seven-sixteenths, belongs to *Crowell;* three-sixteenths he gets by the original contract, and four-sixteenths he bought of Babcock, and paid for it by conveying to Babcock his interest in the first 12,000 acres. This judgment, however, gives *Fletcher,* not merely his nine-sixteenths, but 2,250 acres in addition, or nearly one-half of the interest which Babcock released to *Crowell.* Babcock and *Crowell* were absolute owners of seven-sixteenths of this 12,000 acres; neither of them has conveyed any part of it to *Fletcher;* how then has he acquired a title to more than his

original nine-sixteenths? It is said that, as *Fletcher's* original interest in the 12,000 acres patented to Babcock's assignees was 6,750 acres, and *Crowell's* interest was 2,250 acres, and the quantity of land actually conveyed by *Crowell's* and *Fletcher's* releases to Babcock was only 6,000 acres, "it is apparent that the releases did not dispose of the whole interest of the releasors therein." It is further said that *Crowell's* release of his interest in that 12,000 acres "was not counterbalanced by the release from Babcock to *Crowell* of his interest in the remaining half, for the reason that Babcock had no interest in the remaining half to release." But it is not true that Babcock had title to 6,000 acres in the 12,000 acres patented to his assignees, before the releases were executed. He had only an undivided three-sixteenths interest in that half of the lands, and an equal interest in the remaining half. This interest in the remaining half he released to *Crowell*, while *Crowell* at the same time released his interest in the first half to Babcock, each of these releases being the consideration for the other. How can it possibly be said that one release is good and conveys the interest of the releasor in the first half of the lands, but that the other release conveys no title and passes no interest? And, since Babcock's original interest in the first 12,000 acres was only an undivided three-sixteenths thereof (or 2,250 acres), while *Crowell* and *Fletcher* owned the remaining thirteen-sixteenths, how can it be said that the quantity of land conveyed by *Crowell's* and *Fletcher's* releases to Babcock was only 6,000 acres?

*Frank B. Van Valkenburg*, for the respondent, argued substantially as follows: *Crowell's* assignment to Babcock conveyed to him one-half, and only one-half, of *Crowell's* interest in 24,000 acres. At the time, then, of the execution of the so called release by *Fletcher* to Babcock, Babcock was the owner of 6,000 acres in his own right, and 2,250 acres by assignment from *Crowell*, in all 8,250 acres; *Fletcher* was the owner of his original 13,500 acres; and *Crowell* was the

owner of the remaining half of his share, or 2,250 acres; and
the question is as to the effect of that release. This instru-
ment does not purport to be an assignment or conveyance of
any right, title or interest in lands, and is not executed by the
plaintiff personally, but is simply a statement or stipulation
entitled in this action, made by the attorneys of *Fletcher*, to
the effect that he waives all objection to a patent being given
by the state to Babcock or his order, of the undivided one-
half of the lands mentioned in the complaint, for which Bab-
cock had requested a patent to be issued to one Smith, and
consents that it be so patented, provided that nothing in said
stipulation shall be held to waive plaintiff's objection to the
other undivided half of said lands being patented to any per-
son except himself, otherwise than as the court shall adjudge
and direct in this suit, nor to waive plaintiff's right to recover
judgment against either or both of the defendants personally,
or to any other relief to which he may be entitled except a
conveyance of said first mentioned undivided half of said
lands. The receipt afterwards given by *Fletcher* to Babcock,
referring to this stipulation, and all subsequent papers exe-
cuted by him in Babcock's favor, were given for the same pur-
pose and upon the same consideration as that for and upon
which said stipulation was made; and they were all made long
after *Crowell's* assignment of his interest in the land to Bab-
cock, and upon the strength thereof, and always related to the
undivided half which *Crowell* had requested the governor to
patent to Babcock, and were always accompanied by a proviso
that they should in no way affect plaintiff's title to the other
half, which was claimed by him. The only effect that could
be given them, under the circumstances, was that of annul-
ling the injunction so far as it affected the undivided half pat-
ented to Babcock. None of them contains an assignment of
any interest in lands, or anything looking that way, unless it
be the receipt above mentioned; and that is only an agreement
by *Fletcher* to accept the amount of the note thereby receipted

for, when *paid*, in full compensation for his interest in that half of the lands which he had already permitted to be patented to Babcock; and this is so far from being a conveyance, that it negatives the idea that there was any present intention of conveying to Babcock. Admitting, however, for the purposes of this hearing, that *Fletcher* released his interest in the 12,000 acres to Babcock as fully as *Crowell* did his, it appears that the interest released by *Crowell* is 2,250 acres; and, after deducting Babcock's original interest of 6,000 acres and the 2,250 acres so conveyed to him by *Crowell*, from the 12,000 acres, the remainder, or 3,750 acres, is the amount so released to Babcock by *Fletcher*. Deducting from *Crowell's* 4,500 acres the 2,250 acres conveyed by him to Babcock, we find him still entitled to 2,250 acres; and deducting from *Fletcher's* 13,500 acres the 3,750 acres by him released to Babcock, we find him still the owner of 9,750 acres; and this is the amount of land which he is entitled to receive by the judgment in this action.

Lyon, J. The argument on the motion for a rehearing caused us to doubt whether the case was correctly decided. The argument on the rehearing, and subsequent consideration, have forced upon our minds the conviction that our former decision was incorrect. Our error, we think, consisted in holding that the release or assignment executed by Babcock to *Crowell*, pursuant to the award, conveyed nothing to the latter. That this ruling was erroneous, now appears quite clear to us. Before that release was executed, Babcock had an interest in each undivided half of the 24,000 acres, equal to 3,000 acres; and *Crowell* had an interest therein equal to 2,250 acres. The remaining interest in each undivided half, equal to 6,750 acres (in all 13,500 acres), belonged to the plaintiff. The object and effect of the releases or assignments executed to each other by *Crowell* and Babcock, were mani-

festly to equalize their respective interests in the land. *Crowell* thereby conveyed to Babcock his interest in one undivided half, which (as just stated) was equal to 2,250 acres; and Babcock conveyed to *Crowell* his interest in the other undivided half, equal to 3,000 acres. Thus Babcock became the owner of an interest equal to 5,250 acres in one undivided half of the 24,000 acres, and *Crowell* became the owner of a like interest in the other undivided half thereof — the plaintiff's interest in each half remaining unchanged.

Such being the respective interests of the parties, the plaintiff (who seems to have had knowledge of the transactions between Babcock and *Crowell* in respect to the lands) executed and delivered to Babcock an instrument in writing, of which the following is a copy: "John W. Babcock, one of the defendants in the above entitled suit, has given me his note for three thousand dollars, endorsed by Charles M. Smith, banker of Chicago, Ill., to fall due September 20, 1872, the amount of which, when paid, I have agreed, and do hereby agree, to accept in full compensation for my interest in that certain one-half of the lands earned in 1868, by building 12½ miles of the wagon road mentioned in the complaint in this suit, which I have, by a writing April 12, 1872, permitted to be patented by the state of Wisconsin to said Babcock, or on his order, or to his assigns, and in full compensation and satisfaction of and for all personal claims which I have against said Babcock as set up in said complaint, and of and for any judgment I may recover against said Babcock in said suit; and my attorneys are hereby requested to satisfy and discharge any such judgment of record whenever said Babcock shall desire it to be satisfied and discharged. Dated, April 12, 1872. GEORGE N. FLETCHER." This instrument is supplemented by another of the same date, executed by Babcock to the plaintiff, waiving any claim to a personal judgment in this action against the plaintiff, and dismissing his counterclaim for damages; and also by another instrument dated December 8, 1872, executed

by the plaintiff to Babcock, in which the release or assignment by *Crowell* to Babcock is referred to.

There is no claim that the $3,000 note mentioned in the above instrument of April 12, 1872, has not been paid. It seems to us that such instrument operates as a conveyance to Babcock of the plaintiff's interest in the undivided half of the 24,000 acres to which it relates — which interest, as we have seen, was 6,750 acres. It follows that the plaintiff's interest in the remaining half was only 6,750 acres, instead of 9,000 acres as we held in the first instance.

*By the Court.* — The judgment of the circuit court is reversed, and the cause remanded, with directions to that court to render judgment in accordance with this opinion.

A motion for a second rehearing, by the respondent, was denied at the August term, 1877.